IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOHN AARON LACY                                         PETITIONER

vs.                   Civil Case No. 5:04CV00441 HLJ

LARRY NORRIS, Director,
Arkansas Department of Correction                       RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

        Clerk, United States District Court
        Eastern District of Arkansas
        600 West Capitol Avenue, Suite A149
        Little Rock, AR 72201-3325

## DISPOSITION

Now before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by John Aaron Lacy, an inmate of the Arkansas Department of Correction.  Petitioner was convicted by a jury on December 14, 1999, of first degree murder and sentenced to life imprisonment.  He filed a direct appeal, in which his sole contention was that the trial court erred in admitting into evidence his statement to the police and the evidence obtained

2

therefrom, in violation of <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981).
The Arkansas Supreme Court affirmed his conviction on May 24, 2001.
<u>Lacy v. State</u>, 345 Ark. 63 (2001), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> in
<u>Grillot v. State</u>, 353 Ark. 294, 309,[1] <u>cert</u>. <u>denied</u>, 540 U.S. 967
(2003).  Respondent concedes Petitioner filed a timely motion for
post-conviction relief under Rule 37 of the Arkansas Rules of
Criminal Procedure, which the trial court denied after a hearing on
one issue.  Petitioner appealed, raising the following issues:

> 1.   Counsel failed to proceed with a self-defense
> strategy;

---

[1]   In Petitioner's case, the Arkansas Supreme Court stated
that, in cases challenging the denial of a motion to suppress a
confession,

> this court views the evidence in the light most favorable
> to the State and makes an independent determination based
> on the totality of the circumstances.  <u>Barcenas v. State</u>,
> <u>supra</u>; <u>Steggall v. State</u>, 340 Ark. 184, 8 S.W.3d 538
> (2000); <u>Humphrey v. State</u>, 327 Ark. 753, 940 S.W.2d 860
> (1997).  This court will only reverse a trial court's
> ruling on a motion to suppress, if the ruling was clearly
> erroneous.

<u>Lacy v. State</u>, 345 Ark. at 67.  In <u>Grillot</u>, the court recognized it
had used varying standards to review a trial court's denial of a
motion to suppress a confession and held that, under the
"appropriate standard of review" for such cases the court would

> "make an independent determination based upon the
> totality of the circumstances."  <u>Cox v. State</u>, <u>supra</u>.
> This language is in keeping with the standard of review
> enunciated by the Supreme Court in <u>Frazier v. Cupp</u>,
> <u>supra</u>. In so holding, we overrule any prior decisions to
> the extent they are inconsistent with this opinion.

<u>Grillot v. State</u>, 353 Ark. at 310.  In footnote four, the court
stated its application of "the light most favorable to the State"
standard of review in such cases as Petitioner's "did not result in
any error."  <u>Id.</u>

2.   Counsel failed to call witnesses whose testimony could have helped with a self-defense strategy;

3. Counsel failed to conduct an adequate pre-trial investigation, including locating the gun and scissors allegedly used by the victim during the altercation;

4. Counsel failed to introduce photographs showing cuts on his body and

5. Counsel failed to meet with Petitioner a sufficient number of times.

Respondent's Exhibit E.  The Arkansas Supreme Court affirmed the trial court's denial of relief.  Lacy v. State, 2004 WL 309062 (Ark. February 19, 2004)(Respondent's Exhibit D).

In the present proceeding, Petitioner raises the following grounds for relief:

1.  His conviction was obtained by the violation of his privilege against self-incrimination and his right to counsel and

2.  He was denied the effective assistance of counsel as follows:

A.   Counsel pursued a defense of complete denial, rather than self-defense;

B. Counsel failed to object to the testimony of Dr. Kokes, the medical examiner, on the ground that he only supervised the autopsy of the victim, and Dr. Szentmariay actually performed it and signed the report;

C.  Counsel failed to object to a series of questions posed to the medical examiner, because he had just been hired as a public defender from the prosecuting attorney's office and he was reluctant to "hurt the feelings" of the prosecutors or "make waves" for his friends;

D.  This was counsel's first murder trial and he was too friendly with the prosecutor on this case and

E.  Counsel did not ask the medical examiner the questions Petitioner submitted to counsel.

Respondent admits Petitioner is in his custody pursuant to this conviction and that he no longer has any non-futile state remedies available, but he contends the petition should be dismissed.

## I.

The record reveals that Beverly Henderson was reported missing from the motel where she was living on October 4, 1998.  When the owner of the motel checked on her, he found her room in disarray and blood on the walls, carpet and bed.  He called the police, who found a bloody palm print on one wall of the room.  Petitioner also was living at the motel, and he was seen going in and out of the victim's room the night she disappeared.  On October 13, 1998, he voluntarily appeared at the police station for an interview.  All of his interviews that day and the next were videotaped.  Lacy v. State, 345 Ark. at 65.

Before the interviews began, a police officer gave Petitioner the standard Miranda warnings and took his fingerprints and palm prints.  Within a short time the Arkansas State Crime Lab determined his palm print matched the bloody palm print found at the scene and, from that time, the police considered him to be in

custody.   After several hours of questioning by police officers,
Petitioner gave a statement admitting to killing Ms. Henderson.
Later that night, he showed police where he buried her body.   The
next day, October 14, 1998, the police re-advised him of his
<u>Miranda</u> rights and he gave another statement, again admitting to
the killing.   <u>Id.</u> at 65-66.   The Arkansas Supreme Court, in its
opinion affirming the denial of Rule 37 relief, summarized the
statement as follows:

> At trial, the State introduced appellant's custodial
> statement to the North Little Rock Police, in which he
> admitted killing Beverly Henderson in a motel room.
> However, appellant claimed that he never intended to kill
> her but that he was simply confronting her about his
> missing wallet and cocaine. According to appellant,
> Henderson pointed a gun at him, and he hit her in the
> face in order to get the gun away from her. He stated
> that their struggle continued after he took the gun away,
> as Henderson grabbed a pair of scissors and injured him
> in the ribs. He told police that the two were "exchanging
> blows" as he tried to get the scissors away from her. He
> then grabbed her shirt and held it around her neck. He
> also hit her in the mouth and eye to prevent her from
> taking the scissors. According to appellant, Henderson
> was badly hurt but still acting aggressively. He
> continued to hold the shirt tightly around her neck as he
> looked for the billfold in the pocket of her pants. He
> stated that he pulled tighter on the shirt until she
> started making "gurgling" sounds, then let go. At that
> point, appellant was not sure whether Henderson was still
> breathing. He dumped her purse onto the bed to look for
> his billfold, money, and drugs. Unable to find the items,
> appellant returned to his room to take a shower.
>
> According to his statement, appellant later returned to
> Henderson's room, and realizing that she was dead, he
> attempted to clean up the mess. He wrapped her body and
> belongings in the bed linens and paid a man to take him
> and his "luggage" to Mayflower, where he buried the body
> in a shallow grave on his mother's property. He told
> police that he threw the gun into a creek.  Following his

statement, appellant accompanied police officers to the location of the body.

Lacy v. State, 2004 WL 309062 at 3 (Respondent's Exhibit D).

The prosecutor charged Petitioner with first degree murder. Petitioner filed a motion to suppress his statements and the fruits of the statements. The trial court held a hearing, and denied the motion. Respondent's Exhibit A, pp. 1-5, 7-12, 14-36. The audio portion of Petitioner's official taped statement given on October 14, 1998, was presented to the jury at trial. Respondent's Exhibit A, pp. 130-31. The statements Petitioner made the previous day were not presented to the jury. Dr. Charles Kokes of the Arkansas State Crime Lab testified he and another doctor performed the autopsy on the victim, and they found evidence of strangulation and extensive blunt force trauma to her head, face and body, including bilateral fractures to her jaw, a fractured cheekbone and multiple lacerations to the front of the tongue. He stated her injuries were consistent with her being kicked repeatedly in the face and then strangled. Respondent's Exhibit A, pp. 156-73. Petitioner did not testify and the defense rested at the close of the prosecution's case (Respondent's Exhibit A, p. 174). The jury convicted Petitioner of first-degree murder and the trial court sentenced him to life imprisonment. Lacy v. State, 345 Ark. at 66-67.

On direct appeal, Petitioner argued that, at a point prior to his giving his first statement, he had invoked his right to

counsel, but the police initiated further contact with him in violation of <u>Edwards</u>, and that his mother, Mrs. Tolliver, in effect, became an agent of the police when she acted as a go-between to obtain his confession.  Respondent's Exhibit A, pp. 180-91.  A majority of the Arkansas Supreme Court found Petitioner initiated further communication with the police after he invoked his right to counsel, his confession did not violate <u>Edwards</u>, and he knowingly and intelligently waived his <u>Miranda</u> rights.  <u>Lacy v. State</u>, 345 Ark. at 74; <u>see</u> <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044 (1983)(holding that, even if the accused initiates the contact resulting in re-interrogation, the prosecution must still prove subsequent events show the accused validly waived his right to counsel and right to remain silent).  The court further found Mrs. Tolliver's involvement did not violate Petitioner's rights because he requested to see her numerous times, and Sergeant Dancy testified emphatically at the suppression hearing that she did not act at the direction of the police department.  <u>Lacy v. State</u>, 345 Ark. at 75-76.  In a dissenting opinion, two justices would have found the police initiated further contact with Petitioner after he had invoked his right to counsel and his statement should have been suppressed.  <u>Id.</u> at 82-83.

II.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal habeas court may "undertake only a 'limited and deferential review of [the] underlying state court decisions.'" Morales v. Ault, 476 F.3d 545, 549 (8th Cir.), cert. denied, 128 S.Ct. 177 (2007); Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir.), cert. denied, 540 U.S. 1059 (2003).  This court may only determine whether the conviction or sentence violates the Constitution or laws or treaties of the United States.  See Williams v. Taylor, 529 U.S. 362, 389 (2000).  The question under AEDPA is whether the Petitioner seeks to apply a rule of law that was clearly established by the United States Supreme Court at the time his state court conviction became final.  Id. at 379 (Stevens, J. concurring).  If he is, he is entitled to relief if the state court's decision was either "contrary to, or involved an unreasonable application of," that established law.  Id. at 391.

> '[A]n unreasonable application of [the Supreme Court's] precedent' occurs 'if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts.' Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J.).  To be unreasonable, the state court's application of Supreme Court precedent 'must have been more than incorrect or erroneous.' Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).  Rather, the application 'must have been objectively unreasonable.' Id. (internal quotation omitted).

Garcia v. Mathes, 474 F.3d 1014, 1017 (8th Cir. 2007).  Here, the Arkansas Supreme Court correctly identified Edwards as the

controlling Supreme Court precedent, and this court must determine whether its application of that law in this case was reasonable.

### III.

> When a suspect in custody is subjected to interrogation, the suspect must be informed of his right to counsel and his right to remain silent. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If at any time during the custodial interrogation, the suspect unambiguously invokes his right to counsel, all interrogation must immediately cease and may not be resumed, absent a break in custody. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Once the suspect has invoked his right to counsel, law enforcement officers may not resume the interrogation unless it is the suspect who initiates the exchange. Edwards v. Arizona, supra.

Lacy v. State, 345 Ark. at 77 (Imber, J., dissenting). Although this court must apply a presumption of correctness to the facts found by a state court, "whether those facts constitute an 'initiation' under Edwards is a legal question requiring de novo review. Holman v. Kemna, 212 F.3d 413, 417-418 (8th Cir.), cert. denied, 531 U.S. 1021 (2000) .

The parties agree Petitioner unequivocally invoked his right to counsel. After a lengthy interrogation, first by Detective Armstrong and later by Sgt. Dancy and during which time Petitioner also spoke with his mother, Dancy and Mrs. Tolliver left Petitioner in the room alone. Shortly, Lt. Chapman came to the room and asked Petitioner if he could get him anything. Petitioner informed Chapman he wanted to exercise his right to see an attorney and he

wanted to be taken to the jail.  Chapman immediately left the room.
Respondent's Exhibit A, p. 74.

A short time later, Dancy and Mrs. Tolliver returned to the
room.  She showed Petitioner a copy of the crime lab report
identifying the bloody hand print as his, and she asked him if he
accidently killed the victim.  Dancy spoke to Mrs. Tolliver,
"telling her what he ha[d] told Lacy, but Mrs. Tolliver
interrupt[ed]...."  Respondent's Exhibit A, Abstract of Pleadings,
p. 75.  Petitioner requested to speak with his mother alone and
someone outside the room informed Dancy that the captain wanted to
see him.  Before Dancy left the room, he said, "John, I'm not
trying to hurt you, man.  I'm trying to be honest with you."
Respondent's Exhibit A, Abstract of Pleadings, pp. 74-75; Lacy v.
State, 345 Ark. at 78, dissenting opinion.  Petitioner argues in
this proceeding it is this statement that reinitiated contact with
him after he had invoked his right to counsel.

> [T]he term "interrogation" under Miranda refers not only
> to express questioning, but also to any words or actions
> on the part of the police (other than those normally
> attendant to arrest and custody) that the police should
> know are reasonably likely to elicit an incriminating
> response from the suspect.

Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980).

The majority opinion did not mention this statement by Dancy,[2] and merely commented that "Sgt. Dancy leaves the room after staying there for a little more than one minute." Lacy v. State, 345 Ark. at 69. Instead, the court focused on a short time later, after Petitioner visited with his mother alone and admitted his guilt to her. Mrs. Tolliver called Dancy into the room and indicated to him that Petitioner wanted to give a statement, but while Dancy was going over the rights form with Petitioner, he again invoked his right to counsel and Dancy left the room. At his mother's urging, Petitioner admitted where he had buried the body and she left the room to get Dancy. Dancy returned and Petitioner said, "Yeah, I did it, man." Petitioner then gave his first recorded statement, which was not introduced at trial, but which led to the second recorded statement the next day, which the prosecution presented to the jury. The first recorded statement was not abstracted. Id. at 69-72.

There is no need to decide in this proceeding whether Dancy's statement that he was "not trying to hurt" Petitioner and was only "trying to be honest with" him was an unconstitutional initiation

---

[2]   Petitioner did not rely on this particular statement by Sgt. Dancy for his argument on direct appeal. Instead, he argued Dancy reinitiated contact when he provided police evidence to Ms. Tolliver and accompanied her into the room to observe what would happen when she showed the evidence to Petitioner. Respondent's Exhibit A, p. 186. Petitioner did not focus on this statement until his reply to the Response in these proceedings (DE #10), p.12.

of contact with Petitioner in violation of <u>Edwards</u>, or whether the
Arkansas Supreme Court's failure to mention this contact at all was
unreasonable, because the trial court's error, if any, in admitting
the statement Petitioner gave the next day was harmless.   <u>See</u>
<u>Arizona v. Fulminante</u>, 499 U.S. 279, 308-312 (1991); <u>see also</u> <u>Neder</u>
<u>v. U.S.</u>, 527 U.S. 1, 18 (1999).

> Even if the state court decision was contrary to, or
> involved an unreasonable application of, clearly
> established federal law,... we must apply <u>Brecht</u>'s
> harmless-error analysis, unless the error was a
> structural defect in the trial that defies harmless-error
> analysis. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 629, 113
> S.Ct. 1710, 123 L.Ed.2d 353 (1993). Under <u>Brecht</u>, habeas
> relief is proper only if the error had a "substantial and
> injurious effect or influence in determining the jury's
> verdict." <u>Id.</u> at 623, 113 S.Ct. 1710 (internal quotations
> omitted). A "substantial and injurious effect" occurs
> when the court finds itself in "grave doubt" about the
> effect of the error on the jury's verdict. <u>O'Neal v.</u>
> <u>McAninch</u>, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d
> 947 (1995). "Grave doubt" exists where the issue of
> harmlessness is "so evenly balanced that [the court]
> feels [itself] in virtual equipoise as to the
> harmlessness of the error." <u>Id.</u>

<u>Toua Hong Chang v. Minnesota</u>, 521 F.3d 828, 832 (8th Cir.
2008)(footnotes omitted).

The dissenting justices in <u>Lacy</u> did not specifically consider
whether any error would have been harmless under <u>Chapman v.</u>
<u>California</u>, 386 U.S. 18, 24 (1967), the harmless error standard for
cases on direct review, but they added this final comment:

> It should be noted that the suppression of Mr. Lacy's
> confession would not leave the State without recourse
> upon the retrial of Mr. Lacy.  Before he invoked his
> right to counsel and Sgt. Dancy reinitiated the
> interrogation, Mr. Lacy made highly incriminating

comments to Ms. Tolliver.  Specifically, he told his
mother that he knew Ms. Henderson was dead and that she
was buried in Mayflower. Ftn.2  In addition, the State
has physical evidence linking Mr. Lacy to the crime.
Thus there is ample evidence available to the State upon
retrial.

Ftn. 2.  As a result of these statements by Mr. Lacy, Ms.
Henderson's body eventually would have been recovered
from its burial site on Ms. Tolliver's property at
Mayflower.  "[W]hen, as here, the evidence in question
would inevitably have been discovered without reference
to the police error or misconduct, there is no nexus
sufficient to provide a taint and the evidence is
admissible." Nix v. Williams, 467 U.S. 431, 448 (1984).

Lacy v. State, 345 Ark. at 83.

I cannot agree that the police would have inevitably found the

victim's body, based only on Petitioner's comments to his mother

prior to his invocation of his right to an attorney.  It appears

from the record that the body was buried underwater in a wooded,

swampy, out of the way area near Ms. Tolliver's land, not directly

on it, and that Petitioner had to point the officers to the grave

and the places he buried various other incriminating objects from

the motel room (Respondent's Exhibit A, pp. 117, 120).

I do find the blood and disarray in the motel room was strong

circumstantial evidence that a murder occurred there.  Petitioner's

bloody palm print, the statement to his mother that he knew the

victim was dead and she was in Mayflower and testimony that he was

seen going in and out of the motel room the night of the murder was

sufficient evidence to tie him to the crime and the disappearance

of the body.  Even if the evidence of the body, its location and

14

the autopsy were inadmissible, I am convinced Petitioner's statement to the police did not have a "substantial and injurious effect or influence in determining the jury's verdict." I further find that, although I may have reached a different conclusion regarding whether Ms. Tolliver was used as an agent of the police, the state court's conclusion that she did not act at the direction of the police, Lacy v. State, 345 Ark. at 75-76, was not unreasonable. See Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (reiterating holding in Williams v. Taylor, supra, that the state court's application of Supreme Court precedent "must have been more than incorrect or erroneous"). Petitioner is not entitled to relief on ground one.

IV.

Petitioner's ground two is that he was denied the effective assistance of counsel. To succeed on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must show that his attorney's performance was constitutionally deficient and there is a reasonable probability that the outcome would have been different but for the deficiency. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Petitioner first argues in ground 2(A) that counsel pursued a defense of complete denial, rather than one of self-defense. In support of this claim, Petitioner contends counsel refused to

petition the trial court for the assistance of expert witnesses to establish that the victim's injuries were life-threatening only when combined and compounded with acute cocaine intoxication; to explain the amount of cocaine found in the victim's body would have made her violent; to show he was not culpable of first degree murder and his intent was only self-protection, and to explain his mental state that caused him to remove the victim's body.   He further contends counsel should have recovered the scissors used by the victim to wound Petitioner, and he should have directed the police to the correct location of the gun, and his failure to do so caused Petitioner to lose corroborating evidence of his self-defense theory.   He also contends counsel refused to call Michael Jones to testify the victim robbed him, and Leon Shelves to testify as to the victim's violent nature when she needed crack cocaine, which would have corroborated his theory of self-defense.

Petitioner raised the general claim of ineffective assistance of counsel and some of his specific allegations in his Rule 37 proceeding.   He did not present in state court, and he has not presented here, affidavits or any other evidence that would support his assertion that the alleged omitted evidence existed and was available for trial.   The circuit court dismissed all claims, except his assertion that counsel failed to present his defense of self-defense.   The court held a hearing, and eventually denied relief on that claim, also.   Petitioner's Rule 37 appeal focused on

16

counsel's failure to pursue self-defense as a defense.   The
Arkansas Supreme Court set forth the following facts:

> According to Dr. Charles Kokes, an assistant medical
> examiner, the autopsy revealed that Henderson died as a
> result of multiple blunt force injuries and
> strangulation. Kokes contradicted appellant's statement
> that he only used his fist, as a fist could not have
> inflicted Henderson's facial injuries without also
> sustaining fractures. According to Kokes, Henderson's
> injuries were consistent with being kicked in the face.
>
> At the Rule 37 hearing, Linda Tolliver, appellant's
> mother, testified that she saw appellant the morning
> after Henderson's death and that he told her that the
> cuts on his face were the result of a fall. Tolliver
> testified that it was not until later that she found out
> about Henderson's death. According to Tolliver, appellant
> told her that he was defending himself at the time
> Henderson was killed. Tolliver testified that she made
> counsel aware of appellant's statements and that counsel
> responded that he was treating the case as a murder.
> Tolliver went on to testify that as a result of counsel's
> refusal to use a self-defense strategy, she contacted the
> Public Defender's Office and the Public Defender's
> Commission with her complaints.
>
> Counsel testified that his trial strategy was to present
> a general denial defense because he did not believe a
> self-defense argument would work. According to counsel,
> the self-defense theory ended once appellant got the gun
> away from Henderson and continued to beat her in order to
> keep her quiet. Another big concern for counsel would
> have been explaining why, if he acted in self-defense,
> appellant attempted to cover up what had happened by
> burying the body. Given these facts, appellant's own
> statement to the police, and the autopsy report, counsel
> testified that it seemed more plausible to argue that an
> altercation took place and that appellant recklessly
> caused Henderson's death.

Lacy v. State, 2004 WL 309062 at 3-4 (Respondent's Exhibit D).

Relying on the standard enunciated in Strickland, the court
found counsel's decision not to pursue Petitioner's theory of self-

defense was reasonable trial strategy, as was his decision not to call witnesses to support such a theory, not to investigate and search for the gun and scissors and that, given the overwhelming amount of evidence against Petitioner, he had not shown any prejudice. <u>Id.</u> at 4-5. The court further found Petitioner's allegation that counsel's inaction amounted to a constructive denial of counsel requiring no showing of prejudice was meritless.

> A review of the record reveals that counsel adequately cross-examined the State's witnesses and moved for a directed verdict on the basis that the State failed to prove that appellant acted purposefully to cause Henderson's death. Accordingly, one can hardly say that counsel failed to engage in "meaningful adversarial testing." Appellant has not provided a basis upon which prejudice may be presumed; therefore, we affirm the trial court's denial of relief.

<u>Lacy v. State</u>  2004 WL 309062 at 5 (Respondent's Exhibit D).

The state court identified the correct standard found in <u>Strickland</u> and I find no basis for holding it's application of the standard to ground 2(A) was unreasonable.

V.

Petitioner did not assert the remaining claims of ineffective assistance of counsel in his Rule 37 appeal and, thus, they are procedurally defaulted, even if he raised them in his original Rule 37 petition and obtained a ruling on them from the state circuit court. <u>See</u> <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149-50 (8th Cir. 1997, <u>cert</u>. <u>denied</u>, <u>Sweet v. Bowersox</u>, 523 U.S. 1010 (1998); <u>Interiano v.</u>

<u>Dormire</u>, 471 F.3d 854, 856 (8th Cir. 2006) (Claims not raised in post-conviction proceedings, including appeal, are defaulted); <u>Osborne v. Purkett</u>, 411 F.3d 911, 919-20 (8th Cir. 2005) (finding no cause to excuse the procedural default of a claim of ineffective assistance of trial counsel where the claim was presented in the petitioner's Rule 29.15 motion but was not pursued on appeal).

In response to the assertion that his claims are barred, Petitioner argues he did not receive notice that the trial court had dismissed some of the claims in his Rule 37 petition prior to the appointment of counsel and the hearing on the petition, which does not explain why these claims were not raised in his Rule 37 appeal.  Ineffective assistance of counsel during post-conviction proceedings does not excuse a procedural default because there is no constitutional right to counsel during that stage of criminal proceedings.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-53 (1991).

Finally, Petitioner has not shown he is entitled to the "actual innocence" gateway exception to the procedural default doctrine.  Although he argues he is innocent of first degree murder, his arguments amount only to a claim of legal innocence. The gateway exception requires a petitioner to "support his allegations of constitutional error with new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial," which shows a "constitutional violation has

probably resulted in the conviction of one who is actually innocent."   Schlup v. Delo, 513 U.S. 298, 324, 327 (1995). Petitioner's bald assertions that evidence exists to support his claim of self-defense do not pertain to "new evidence," and are merely conclusory.  After carefully considering the record in this case and Petitioner's assertions, I must conclude Petitioner is not entitled to relief.  Any argument not specifically addressed was considered and determined to be without merit.

IT IS THEREFORE ORDERED that this petition be, and it is hereby, dismissed with prejudice.  The relief prayed for is denied.

SO ORDERED this 8th day of September, 2008.

Henry L. Jones, Jr.
United States Magistrate Judge